the next case for argument this morning is 147008 Carroll v. Gibson. Ms. Cook, whenever you're ready. Thank you, Your Honor. May it please the Court, Barbara Cook appearing on behalf of the claimant Appellant Mrs. Carroll with me at the Council table is Matthew Alaco of the law firm of Chisholm Chisholm & Kilpatrick. The issue, and I'd like to reserve three minutes for rebuttal. The issue this morning is whether the statute should be interpreted to require an individual to apply for benefits before she had any reasonable belief that she would be eligible for those benefits. Subsection E of 101 only applies to people who would be eligible for benefits in 2003 but for their remarriage. In fact, the Secretary admits as much on page 4 of his brief. He notes that the statute covers people who would otherwise be eligible and that that's the only, those are the only people who had to meet the one-year filing deadline. Do you read eligible to mean entitled to? I do, Judge. I think that that's consistent with the plain language of the phrase. It's eligible for benefits. It's not just eligible to apply. Before the enactment, the definition excluded the person who had been remarried, right? Correct, Judge. So you weren't an eligible surviving spouse? You did not have status as a surviving spouse? Correct. So you weren't eligible, you didn't have eligibility because of the fact that you've remarried? Correct. So what the statute did in 92-93 was it all of a sudden said the fact that you've remarried no longer is it denies you access to the system? That is correct, but it doesn't grant you eligibility for the benefits. It grants you the right to come into the system to ask for it. It grants you the right, it grants you status. I mean, anyone has the right to ask for benefits, but yes, it gives her status. Right, and after the statute was amended and before the irreversible presumption came in of service connection, we found over 500 cases of people who came in and asked for service connection for ALS. And we found many of those cases were successful. Now, it's hard. Your particular client, I think, had a very difficult time establishing service connection, except perhaps through continuity of symptomatology under 303B. I found a bunch of cases where your brief argued that it would be, in essence, malpractice to have brought the case before the presumption was established. Because she had no evidence of any continuity of symptoms, Judge. There's no evidence that he suffered any symptoms. The class of cases was bringable and winnable before the presumption was tilted entirely in favor of the judge? It was theoretically possible for an individual, but it was not possible for her as an individual to have established those. That sounds like an equitable tolling argument to me. I don't think it is equitable tolling, Judge. I think that it is instead a question of strict statutory interpretation. Does the statute require people who did not believe they were eligible to apply, nonetheless? And to interpret the statute to require people in that circumstance to apply leads to the absurd result of saying you have no basis for believing you're eligible. But you nonetheless have to apply. You have to force the VA to go through this entire system. You're telling me here today there was no hope under continuity of symptomatology, but I don't know that. There is no evidence in the file. Of course there's no evidence in the record, because nobody tried the case. I mean, if you look at especially the way the continuity of symptomatology relief had been interpreted, if there was a symptom of ALS that showed up during service, and there was continuity of symptomatology to a diagnosis later on, you'd have service connections. Correct. All I'm saying is that avenue of possible relief was out there. The fact that you may or may not have prevailed on it is something I don't know, because nobody ever chose to pursue it. But it's not that she didn't choose to pursue it, Judge. It's that she didn't have a reasonable basis for pursuing it. And I think what we're talking about here, even with the cases that you will ever— until there was an irrebuttable presumption that you win. No, I'm saying that there has to be some evidence, that there has to be some reasonable person standard read into the statute, not some theoretical hypothetical theory that has absolutely no basis in the law or in the facts of an individual's case. That the people who had to— But what— The sound being the BVA seemed to see your plea as one in equity. That's what they said in their decision. And you weren't authorized to go there. I'm not asking for equitable relief. I'm not asking for it to be case-specific to just Mrs. Carroll. It's not just Mrs. Carroll who would have had the burden under the lower court's interpretation and under the Secretary's interpretation of applying for benefits when there was no reasonable basis. The VA's definition of service connection as the cause of death is generously broad. It includes people who had a symptom that was later determined to be related to a service-connected condition. Maybe I'm missing something. I guess I'm a little unclear. Let's assume we even agree with you that she wouldn't have been eligible during this period of time. Don't you still have a gap in the statute that doesn't get you to where you need to go? I mean, maybe it's a gap and Congress forgot about it, but the statute is quite clear, is it not, that you've got this period to sign up, and that's the period one year beginning on the date after enactment of the Act. But only people who were actually eligible for benefits in 2003 had that year. The other people she follows, the one year under E is a subset of the group under A. A says, going forward, remarriage for someone over the age of 57 is no longer a barrier to receiving DIC benefits. She said that. Someone who had a plausible but not necessarily winning claim was eligible. I think that's one way to interpret the statute. That's why I'm trying to refine your case down to whether or not you aren't simply asking for a case-specific case to your client who you claim didn't have a plausible eligibility. I agree that that is one way. Eligibility just divides itself down into subsets of how strong your case is. It starts with if you have a 100% winner, you're eligible. That's right? Correct. If you have an 80% winning chance, you're eligible. You have a 60% chance you're eligible. 49% maybe we cut you some slack and you can file the lawsuit whenever you want. I wouldn't frame it the way you just did, Judge. I would say that there's a continuum where someone like Mrs. Frederick, for example, where she definitely had been receiving benefits. The only piece she was missing at the time of the 2003... That was somebody who had a 100% chance to win. Yes, exactly. It was crystal clear that she was eligible for benefits. Then in the middle, there are people who would have been eligible had they simply signed the piece of paper, that the law and the facts as they existed were clear. Someone who... So you're telling us eligible means 100%. I think that it does. I think that that's more consistent with the plain language of the statute, but I think that the phrase would be eligible could also be... All of the surviving spouses that did file for benefits between 2003-2004... I'm sorry, I missed the first part of your question. All of the surviving spouses that did comply with the one-year window provision in the Act that did apply in the window between 2003-2004, they didn't just merely apply. They actually still had to prove their case, right, that there was a service connection between the veteran's death and connected to the service. I honestly don't know what the numbers were in terms of the number of people who sought simply reinstatement, like Mrs. Frederick, and people who sought new benefits. If it was the first time someone had applied, yes, they would have to establish entitlement. So now it's just a question of proof, just like it was a question of proof for Ms. Carroll. Yes, and it's a question of whether the statute required her to do that when she and people like her didn't have any belief that they were eligible. The problem is if you're adhering to the position that eligibility is synonymous with entitlement, that that leaves you to this statutory provision only covering a very minor subset of people, which is persons who had previously established entitlement but just lost them because of the remarriage, right? If that's your view of the statute, then it would only be limited to that small category because, as Judge Chen pointed out, somebody who thinks he has a good case and is eligible might, at the end of the day, lose. No, it does not limit the statute that way, Judge. That group is only the group that has to apply within one year for reinstatement. It does not cover every person who has a potential claim. We're basically talking about whether eligible means eligible to file or eligible to win. But the statute says eligible for benefits. I understand. Eligible to seek the benefits. You don't just get the benefits by filing. You always have to prove service connection. If we were to interpret eligible to mean eligible to file, then you lose. If we say eligible to win, you have to prevail, then you would prevail. But what's this going to do to where the word eligible appears throughout the entire range of statutes and regulations dealing with veterans affairs? If eligible means you can only file, you're barred from filing until you have a winning case. Is that what it's going to mean? No, I think it's consistent with the statutory provisions. A person who is eligible for benefits, typically in the statute and in the regulations, it means that the person is eligible to receive those benefits, not just eligible to apply, because status is simply the first step. Establishing status as a veteran, status as a surviving spouse, that's the first step. Are you saying that it has to have been established that someone is eligible? When you say someone is eligible for benefits, they're entitled to benefits, that presumes that there has been a finding, an adjudication or some sort of finding as to entitlement, right? I think that that's the group that the one-year deadline applies to, yes. I don't think it has to be read that way. I think that it can also be read to include people who had some reasonable belief, not who had, but where there was a reasonable basis based on the facts and the law for establishing eligibility, but would be eligible for benefits should not be expanded in a way that is inconsistent with the intent of Congress, in a way that imposes a burden on claimants to be clairvoyant that perhaps someday the science or the VA will decide that the symptom that the spouse had was related to service and that therefore they might be eligible. That's just absurd. It's an absurd result to simply think that Congress intended to impose that on claimants and impose that burden on the VA to process these claims when there was not a basis for determining that the person was entitled. Why don't you hold on to your title. I will. We'll listen to you from the government for a few minutes, Mr. Kerwin. Good morning, Your Honors, and may it please the Court. I'd like to direct my comments directly to this idea of whether in this statute, eligibility means the same thing as entitlement. It clearly does not, and I heard opposing counsel in her remarks continually equate the idea of eligibility to the notion of status, and we agree with that idea. Eligibility is about status, and these statutes, the two most central issues here, are all about status. Section 101E talks about an individual who is eligible for benefits by reason of the amendment made in Section 101A, and Section 101A, in turn, talks about status of surviving spouse in light of that person's remarriage, or in these cases, previous remarriage. And as Judge Klebinger pointed out, the whole notion of the statutory section has to do with the status definition of who counts as a surviving spouse. That is in 38 U.S.C. Section 101.3, and the point is, previously, that definition of the status of surviving spouse defined a way someone who was remarried, they couldn't qualify as a surviving spouse. Can I ask you just a practical question? If Ms. Carroll had indeed come in within the statutory time period and lost, which we all assume there's at least a good possibility that she would have lost, would she have any recourse under the subsequent amendment under 2008? It's not a COE claim, presumably, but is there some way she could then go back and get it once this new provision was passed? Yes, I believe she would have recourse. And I have to preface my remarks by stating, of course, we can't predict the outcome of a hypothetical BVA determination. Well, what's the theory? They assume she had applied on time and tried to establish service connection. They said, no, there's no continuity of symptomatology. Too long ago. He served too long ago. And then the new regulation comes in that establishes the presumption of service connection. We're aware of at least one case that presented essentially that precise scenario. And it's a case that the CAVC decided last year. It's called Hickman. There's no Federal Register site or vet app site. The site is 2013 Westlaw 1777419 and the case number is number 112769. That was Westlaw 1777419? Yes, that's correct. It also cited Frederick, so you can get there just by looking at the citing references to Frederick. In that case, the factual scenario was that there was a surviving spouse who had applied for DIC benefits in the 2003-2004 time frame. It doesn't involve the extra wrinkle of the remarriage provision, but that aspect of it is sort of irrelevant to the issue we're discussing. This person applied in 2003-2004 with a denied service connection for ALS. And then as a result of the new regulation that came into effect in 2008-2009 with the presumption, both sought a remand of her existing case, and this is the key part, her advocates on her behalf also sought to reopen her original claim under the provisions that allow a veteran or surviving spouse, or in this case, I guess, just a surviving spouse, to reopen a claim based on new and material evidence. And the factual recitation in the Hickman case makes clear that the board, excuse me, the VA, the regional office, then granted that request to reopen the claim under 38 U.S.C. 5110G. That's a statutory provision that the language isn't quite directly on point, but it has been interpreted broadly to allow a surviving spouse to take advantage of what's a new act or issue, or in other words, a new law or regulation. So in this case, the RO, the regional office, granted that application to reopen based on the new law, the presumption of ALS. And so, again, we can't predict what would happen in this case, but at least that's one scenario where precisely what Your Honor is asking about. Can I ask you why Congress would have been driven to draw the lines where the government's position suggests those lines should be drawn? I mean, if indeed we all were to agree that there was a very, very slim chance that she would have been able to prevail in coming in in the early years before this 2008 amendment, then why would Congress have wanted to distinguish or deprive or, well, said another way, why would it have wanted to force people who reasonably and objectively concluded at a particular time they didn't have a meritorious case so they weren't going to clog up the lines for other people with meritorious cases? Why would Congress have said, no, we want people to come forward even though they think and they know they're going to lose just to preserve their rights in case something happens at the end of the day years later? Isn't that kind of an odd thing for Congress to have thought? Well, the legislative history of this statute makes clear that it had a prospective policy rationale. The idea of the Veterans Benefits Act, and this is at page 12 of the House report, but it was also recognized in this court's Frederick decision. The purpose of the law is really to not discourage existing surviving spouses who may choose to remarry in the future to not get discouraged because if they choose to remarry they might potentially lose their benefits. So Congress said, look, we're going to change the law. If you remarry, in the future you won't lose your benefits. So the law is really about a prospective issue and Congress turned around and provided in section 101E a limited retroactive effect to the law, presumably out of fairness to folks who had previously remarried, but Congress made a conscious policy decision to limit it. But if we're talking about a subset of people who were focusing on people who would have lost their benefits, then we're not talking about Ms. Carroll because she didn't have any benefits to lose as of 2003, right? Well, that's not, I'm sorry, Your Honor, that's not exactly correct. In fact, hearkening back to the Frederick decision, this law has always been interpreted, at least by the Court of Veterans Claims, to apply to the folks in Ms. Carroll's category, folks who had never applied for the benefit. The whole issue in Frederick and how that court came before this court on appeal was that the Court of Veterans Claims had said, well, it applies to people like Ms. Carroll who have never applied before, but we're going to interpret it as not applying to people who had previously received the benefit and would now be reapplying. We're going to say that that person's initial application counted as being within the deadline. And this court reversed and said, no, it's those people as well. What Ms. Carroll is coming in and now arguing is the converse, that actually, no, it was just the people in Frederick. But essentially, that's not how these types of provisions work. Although this isn't quite a statute of limitations because it has a substantive component to it in terms of defining who is a surviving spouse. This kind of thing occurs all the time in the statute of limitations context where someone's ability to, where the law changes or a new legal interpretation or regulation comes into effect where someone's ability to pursue a claim may increase in some kind of dramatic way. Tobacco litigation is an example that comes to mind for me, but that doesn't change the fact that the statute of limitations on someone's claim is unlikely, though it may be at a particular time. We've described the one-year time period as a statute of repose. In Iacono and other cases, the Supreme Court did it in the Lamp case to say it's a window of time. What Congress is trying to do is say we have no idea what our liability is. The one-year window would allow anyone that ever had a claim going back time immemorial to come in and file. So the Congress creates a one-year time window to say we're going to know after a year what our potential exposure is. That's correct. That sweeps up everybody regardless. If you didn't file, it sweeps everybody up. That's correct, and that seems to be what's going on in the legislative history of this Act. There are congressional budget estimates of exactly how much this is going to cost. There was an initial attempt to do this at age 55 years and Congress raised the eligibility age to 57 years, so it seems relatively clear that what Congress is doing is... If we were to agree with your adversary on what eligible means, are there any unintended consequences here for other provisions in veterans' benefit law, either in statutes or regulation where the word eligible shows up? There would appear to be, and I don't think one has to look very far, even to take Ms. Carroll's interpretation of eligibility in this statute creates an absurd result because as Judge Chen noted earlier, if eligibility and entitlement were the same thing for the statute, when the statute says that someone is eligible by reason of the amendment in Section 101A, the idea is not that they're entitled by reason of the amendment in 101A. They still have to meet the various criteria to actually be entitled to benefits. So if you instead interpreted the statute to mean that eligibility and entitlement are the same thing, so that being eligible by reason of the amendment means to be entitled by reason of the amendment, that essentially one would simply have to submit an application to be entitled to benefits. That's clearly not what's going on here, but it's a totally absurd consequence of the interpretation that Ms. Carroll is proffering, and presumably that would propagate throughout the veterans' benefits laws and apply to other sections. There's a clear distinction. Well, I suppose we could say we're defining eligible solely for purposes of this one-year window statute of repose and for no other purpose. I'm always a little worried about when you throw the pebble in the pool if the pool is quite still, you get concentric circles that go almost out to infinity. Right. To give an example of what one of those concentric circles could be, a statutory section that we cited to in our brief was section 103D4, which defines the first month of eligibility for benefits. This is the same statutory provision that's amended by section 101A of the Act here. That section 103D4 says that the first month of eligibility is the month after I believe either the veteran died or after a divorce or annulment, things of that nature. But if one were to then interpret eligibility just a couple of statutory sections above to mean essentially entitlement, then in this section 103D4 you would be talking about essentially entitlement to benefits even though clearly one doesn't have immediate entitlement to benefits upon regaining eligibility to apply for benefits in those types of situations. That's just one example. We also cited another section in our brief, which is 38 U.S.C. 6303C, which is the provision that covers VA's obligation to notify people who may be eligible for benefits. Of course, again, if you confuse eligibility and entitlement, you would get potentially absurd results there. Another issue that we raised in our brief... Before you go there, your alternative argument I assume. Yes. Before you go there, how does the 2008 regulation operate this evidentiary presumption of service connection for ALS? How automatic is it? Can you just turn in a death certificate and a medical exam saying my veteran deceased spouse died from ALS and that's it? Or is there some kind of extra case that needs to be put on? I don't believe it's 100% automatic in the sense that if there were contrary evidence that showed that the veteran had developed ALS conclusively for example outside of his or her military service, then that presumption could be overcome. But it stands in the place of evidence to show service connection. What if the VA had had a regulation in 1988 that said it's never service connection when a veteran dies from ALS? And then in 2008, they amended that regulation and said we've changed our minds, we've looked at the issue, and now we will presume that any death from ALS by a veteran is service connected. In that circumstance, when that 2003 Act came out saying you have to be eligible for these benefits in order to apply for these benefits within that one year window as a surviving spouse, would that surviving spouse have been deemed to be eligible for benefits in the face of a regulation that says ALS is never service connected? So that would be a different case from this one. Yeah. Right. Is that surviving spouse eligible for benefits? And the answer is it's hard for me to speculate what the result of an application would be. I think that person would still be a surviving spouse who is eligible to apply for benefits. Zero percent chance of winning. Zero. You've got a regulation now saying no way you're going to win. Right, and I understand that. But in that case, the person would still be an eligible surviving spouse but would not have any chance of entitlement to benefits. I imagine... Well, how would she be eligible if the 1988 reg says she's not going to get entitled to benefits? I mean, don't be afraid to give something up because this is starting to... Right, and I understand. And that's why I'm hesitating to speculate what the result of that would be. I mean, at the end of the day... Congress couldn't possibly have contemplated that all these people who absolutely are precluded from ever getting benefits all of these people ought to run to the VA in this one-year window and try to process cases which they're precluded from winning. I mean, that can't possibly have been what was going on here, right? That would be nonsensical. I don't believe that's what was going on here. So the answer to Judge Chen's hypothetical is? The answer is that I can't speculate as to what would happen in that case. But part of the reason... Well, hypotheticals are all about speculation, right? I understand, Your Honor, but because there is a distinction that's apparent in the statute between the notion of someone simply being eligible to apply for benefits as a surviving spouse which the person in Judge Chen's hypothetical still would be at least for that year period would have regained the status of a surviving spouse who is eligible to apply for benefits. But in a situation where there is zero chance of entitlement because the regulations essentially say we don't recognize this condition I understand Your Honor's point. And that's why I'm saying it would be a different case. But there would at least be a legal question about whether if one truly were eligible to apply but had no chance of entitlement because the condition simply wasn't recognized at the time whether that would be a basis to not apply the regulation. Or whether that person could say, as the person for example in Hickman did look, I sought benefits then even though I had no chance but now this is a recognized condition. Right, but you don't want to clutter up the system of frivolous with Judge Chen's hypothetical because this is frivolous. But you have a distinction here between Congress doesn't write a statute of limitations they don't say like a real statute of limitations they write a statute of repose. They say we're going to create this one year window and sweep everything in it and we do some irrational things and we sweep things in it. The window concept is essentially not always fair. But the window concept is not subject to tolling. If Congress had wanted to have a different way of setting the timing mechanism they would have left equitable tolling open to the government. And Judge Chen's hypothetical screams for equitable tolling doesn't it? Potentially yes. It doesn't even need a loud speaker it's heard throughout the land. Potentially yes and I wasn't trying to suggest that our position would be the same in that different case but I was saying there are some additional legal considerations that would be considered and I didn't want to mislead the court that those might come into effect. One very quick thought which is I left off in the Hickman case two important facts. First of all that the legal issue in the Hickman case went on from here which is that the party was then arguing over whether the ALS benefits should date back to 2008 or the earlier statute. So the key to the Hickman case is in the facts and that's why we didn't cite it. It's not finding precedent but we're not citing it for the law. We're citing it as an example of the fact. The second issue is there are two statutes that govern new and material evidence. There's 5110G which is about new laws and regulations but there's also 38 USC 5108 which is a separate provision and a VA reg which is 38 CFR 3.156 and those deal with new evidence that comes up rather than a liberalizing law. So nothing further Your Honor we ask that you affirm the judgment of the veterans court. Thank you. Ms. Cook since we went over with the government's lawyer why don't we give you five minutes. I think that you said it absolutely correctly Judge Prost when you said Congress could not possibly have wanted to impose this burden to insist that every single person who had some fanciful thought that there might be some possible eligibility in the future that they should burden the agency. That's the absurd result that comes from saying that every single surviving spouse over the age of 57 in 2003 had to apply simply to preserve status and that's why the statute and the Secretary's regulation should not be interpreted to lead to that absurd result. And the flip side of that is that the goal of Congress was to encourage people or permit people, gold star widows such as Mrs. Carroll to remarry and this interpretation found by the lower court and urged by the Secretary forces Mrs. Carroll into divorce court because if she were to divorce and remarry she could reapply and get benefits. Understandably Judge I'm not suggesting that she would commit fraud. I'm saying that that is the practical consequence. You also appreciate that if we ruin your favor we have to limit the interpretation of eligible to the particular facts of this case, right? I think the statute limits it. The word eligible shows up lots of places and shows up even around, dotting all around you around eligibility, the first month of I'm careful to say that the ordinary notion that Congress means the same word to mean the same thing throughout the statute doesn't apply. I think that there's some risk but I don't think it's the risk that certainly not that the Secretary has suggested the citations he has in his brief do not address eligibility for benefits. They're talking they do not equate eligibility with status and in fact this court's decision in Sharpe said there is no such law that equates eligibility with status. This statute says eligibility for benefits by reason of a change. Right and the change was that then they gave her status. That's the change. There wasn't an eligibility provision other than missing that key element. You could also read it to mean she was ineligible before before the law got changed. She was ineligible as a surviving spouse. She lacked status. And so once she gained status the provision applies to people who only were missing status. The one year statute only applies to people who were missing status who otherwise would have been eligible as the Secretary himself admitted. And it's for that reason and the absurd result that results otherwise that we ask that this court reverse the law report.